**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**

**JOSHUA FIRMIN**                                **NO. 25-63**

## <u>ORDER AND REASONS</u>

Before the Court is the government's Motion in Limine to Exclude Inadmissible Hearsay Statements.[1] Defendant Joshua Firmin ("Firmin") opposes the motion.[2] The government anticipates that Firmin will elicit testimony from A.L., an Iberia Parish Sheriff's Office employee who transported Victim 1 to and from his federal court appearance on the day of the alleged offense, about statements that A.L. claims Victim 1 made to her while A.L. was driving Victim 1 between the Iberia Parish Jail and the U.S. Courthouse in Lafayette.[3] The government originally moved the Court to prohibit Firmin from eliciting inadmissible hearsay statements Victim 1 allegedly made to A.L. both before and after Firmin allegedly physically assaulted Victim 1.[4] The government concedes in its reply brief that Firmin has articulated a potentially valid basis for admission as to the pre-incident statements under Federal Rule of Evidence 803(3).[5] As discussed in more detail below, the post-incident statement is hearsay and Firmin has not established that

---

[1] Rec. Doc. 43.

[2] Rec. Doc. 60.

[3] Rec. Doc. 43 at 1.

[4] *Id.*

[5] Rec. Doc. 68.

any exceptions to the hearsay rules apply. Accordingly, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part.

## I. Background

On March 19, 2025, Firmin was charged by a grand jury in the United States District Court for the Western District of Louisiana with one count of deprivation of rights under color of law and one count of falsification of records.[6] These charges arise out of Firmin's service as a Deputy United States Marshal for the United States Marshals Service.[7] Count 1 of the Indictment alleges that on or about February 29, 2024, Firmin "willfully deprived Victim 1, a federal prisoner, of the right, secured and protected by the Constitution and laws of the United States to be free from cruel and unusual punishment" by physically assaulting Victim 1 without legal justification.[8]

Count 2 of the Indictment alleges that on or about February 29, 2024, Firmin knowingly falsified and made a false entry in a record and document, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Justice Office of Inspector General.[9] Specifically, Count 2 alleges that Firmin:

> wrote a narrative report as part of a United States Marshals Service Field Operational Report regarding a use of force against Victim 1, in which he falsely states (1) that Victim 1 had attempted to spit on Firmin, and (2) that Victim 1's head struck a cell door when Victim 1 "jerked" while being escorted by Firmin. In fact, as Firmin then well knew, (1) Victim 1 had not attempted to spit on Firmin, and (2) Victim 1's head had struck a wall when Firmin pushed him forcefully against it.[10]

---

[6] Rec. Doc. 1.

[7] *Id.* at 1.

[8] *Id.*

[9] *Id.* at 2.

[10] *Id.*

This matter is scheduled for a jury trial to begin on April 13, 2026.[11] On March 11, 2026, the government filed the instant Motion in Limine to Exclude Inadmissible Hearsay Statements.[12] On March 27, 2026, Firmin filed an opposition to the motion.[13] On April 1, 2026, the government filed a reply brief in further support of the motion.[14] On April 8, 2026, the government filed a supplemental reply brief.[15] On April 9, 2026, the Court held a hearing on the motion. With the consent of the parties, the hearing was conducted by videoconference, and Firmin waived any right to an in-person appearance under Federal Rule of Criminal Procedure 43.

## II. Parties' Arguments

### A.    *The Government's Arguments in Support of the Motion*

The government moves the Court to prohibit Firmin from eliciting inadmissible hearsay statements of Victim 1 from A.L. or any other witness.[16] During an interview with investigators, A.L. claimed that Victim 1 made repeated statements to her to the effect that he intended to spit on and punch Firmin when they arrived at the federal courthouse.[17] The government does not dispute that any information that Firmin actually possessed at the time he used force against Victim 1, about Victim 1's intentions toward him, is admissible to show Firmin's state of mind at that time.[18] However, the government argues that A.L. should not be allowed to testify to any

---

[11] Rec. Doc. 37.

[12] Rec. Doc. 43.

[13] Rec. Doc. 60.

[14] Rec. Doc. 68.

[15] Rec. Doc. 71.

[16] Rec. Doc. 43 at 1.

[17] *Id.* at 2.

[18] *Id.* at 4.

threatening statements she allegedly heard Victim 1 make to Firmin before the incident that were not communicated to Firmin.[19]

The government also argues that Firmin should be prohibited "from attempting to elicit A.L.'s dubious claim that Victim 1 told her he had inadvertently injured himself while resisting [] Firmin's efforts to escort him between cells."[20] Because this supposed statement was not made until after the offense, the government asserts it can have no bearing whatsoever on Firmin's intent or state of mind.[21] The government contends that the only permissible non-hearsay use of this statement would be to impeach Victim 1 if he testified that he was injured when Firmin threw him into a wall.[22] Therefore, the government argues that the evidence should be excluded if Victim 1 does not testify.[23]

### B.    *Firmin's Arguments in Opposition to the Motion*

In response, Firmin asserts the pre-incident statements from Victim 1 to A.L. are not hearsay because they or not being offered to prove the truth of the matter asserted.[24] Firmin asserts that the pre-incident statements are relevant to his state of mind because he learned of the statements prior to his use of force.[25] Even assuming that Victim 1's pre-incident statements constitute hearsay, Firmin argues they are independently admissible under Federal Rule of Evidence 803(3), which permits the admission of statements reflecting a declarant's "then-existing

---

[19] *Id.*

[20] *Id.* at 5.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] Rec. Doc. 60 at 3.

[25] *Id.* at 3–4.

state of mind (such as motive, intent, or plan)."[26] Firmin also argues that the pre-incident statements are admissible under Rule 804(b)(3) because they are against Victim 1's penal interest and expose Victim 1 to criminal liability for contemplated criminal conduct against a federal law enforcement officer.[27]

Firmin contends that Victim 1's post-incident statement to A.L. about how the injury occurred are relevant to Firmin's state of mind when he completed the report that Firmin is accused of falsifying in Count 2.[28] Firmin asserts that prior to Firmin writing his report he received a text message from A.L. stating, "He talked the whole way back to the jail and kept saying if he wouldn't have pulled away he wouldn't have hit his head."[29] Firmin points out that the government must prove that he knowingly falsified the report, and the post-incident statement therefore goes to his state of mind.[30] Firmin also argues that the post-incident statement is admissible under Rule 804(b)(3) because it is against Victim 1's penal interest and pecuniary interests.[31]

### C.    *The Government's Arguments in Further Support of the Motion*

In reply, the government concedes that Firmin has articulated a potentially valid Rule 803(3) basis for admission as to the pre-incident statements that Firmin actually received.[32] Therefore, the government is no longer seeking exclusion of that pre-incident statement.[33]

---

[26] *Id.* at 6–7.

[27] *Id.* at 8.

[28] *Id.* at 9.

[29] *Id.*

[30] *Id.* at 9–10.

[31] *Id.* at 11.

[32] Rec. Doc. 68 at 1.

[33] *Id.* at 6.

The government maintains that the post-incident statement should be excluded.[34] The government disputes Firmin's assertion that the post-incident text message from A.L. could have impacted Firmin's state of mind when he wrote the report, because Firmin digitally signed the report on February 29, 2026 at 6:50 PM and he did not receive the text messages from A.L. until the following day.[35] The government also contends that Rule 803(b)(3) does not apply because the victim is not an unavailable witness.[36]

In the supplemental reply brief, the government provides additional information concerning the report obtained by the government on April 8, 2026.[37] Firmin initially generated a report dated February 29, 2024, and provided it to his supervisor on March 1, 2024.[38] On March 1, 2024, the supervisor asked Firmin to edit the report to identify from whom Firmin received information about the victim.[39] On March 1, 2024, Firmin provided a second version of the report, which (1) added the words "Deputh [sic] [A.L.'s name]," to identify the Iberia parish jail transport staff referenced in the report, and (2) added the sentence "DSO [B.S.] also stated to me [victim] stated that he was waiting for me to come to cellblock and spit and use force when he got his hands on me."[40] Later in the day on March 1, 2024, the supervisor asked Firmin to correct typographical errors in the report.[41] Later in the day on March 1, 2024, Firmin provided a third version of the

---

[34] *Id.* at 3.

[35] *Id.*

[36] *Id.* at 5.

[37] Rec. Doc. 71.

[38] Rec. Doc. 71 at 1; Rec. Doc. 71-1.

[39] Rec. Doc. 71 at 1.

[40] Rec. Doc. 71 at 1; Rec. Doc. 71-2.

[41] Rec. Doc. 71 at 1.

report, which corrected typographical errors but did not change any of the wording of the report.[42]

The government asserts that this new information should not change the analysis because the text from A.L. came after Firmin memorialized his account of the incident in the first version of the report, and the account of the actual incident remains unchanged in the subsequent revisions to the report.[43]

### III. Legal Standard

Under the Federal Rules of Evidence, hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[44] Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise.[45] After a party properly objects to the admission of evidence as hearsay, the proponent of the evidence bears the burden to show that the statement is not offered as hearsay or falls within an exception to the hearsay rule.[46]

### IV. Analysis

The government originally moved the Court to prohibit Firmin from eliciting inadmissible hearsay statements Victim 1 allegedly made to A.L. both before and after Firmin allegedly

---

[42] Rec. Doc. 71 at 2; Rec. Doc. 71-3.

[43] Rec. Doc. 71 at 2; Rec. Doc. 71-3.

[44] Fed. R. Evid. 801(c)(1)–(2). Federal Rule of Evidence 801(d) further provides that opposing party's statements and certain prior statements by declarant-witnesses used to impeach or rebut the witness are not hearsay.

[45] Fed. R. Evid. 802.

[46] *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Loomis v. Starkville Mississippi Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 742–43 (N.D. Miss. 2015) ("Once a party has 'properly objected to [evidence] as inadmissible hearsay,' the burden shifts to the proponent of the evidence to show, 'by a preponderance of the evidence, that the evidence [falls] within an exclusion or exception to the hearsay rule and was therefore admissible.'" (citations omitted)).

physically assaulted Victim 1.[47] The government concedes in its reply brief that Firmin has articulated a potentially valid basis for admission f certain pre-incident statements under Federal Rule of Evidence 803(3),[48] and no longer seeks exclusion of the pre-incident statement that Firmin actually received.[49] Therefore, the Court denies that portion of the motion.

With respect to the alleged post-incident statement Victim 1 made to A.L., Firmin has not shown that the evidence is admissible. Firmin contends that Victim 1's post-incident statement to A.L. about how the injury occurred is relevant to Firmin's state of mind when he completed the report that Firmin is accused of falsifying in Count 2.[50] The Fifth Circuit has recognized that when a statement is offered to show the defendant's state of mind at the time of the alleged crime, "the significance of the statements lies solely in the fact that they were made; the truth of the statements is irrelevant for that purpose."[51]

Firmin's argument that the post-incident statement shows his state of mind when he wrote the report fails on the facts. Firmin digitally signed the report on February 29, 2026 at 6:50 PM, and he did not receive the post-incident text messages from A.L. until the following day.[52] Although Firmin subsequently submitted revisions to the report at the request of his supervisor, Firmin's account of the incident remains the same in all three versions of the report.[53] Therefore,

---

[47] Rec. Doc. 43.

[48] Under Rule 803(3), regardless of whether the declarant is available as a witness, the rules against hearsay do not prohibit the exclusion of "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan). . . ."

[49] Rec. Doc. 68

[50] Rec. Doc. 60 at 9.

[51] *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989)

[52] Rec. Doc. 68 at 3–5.

[53] Rec. Doc. 71-1; Rec. Doc. 71-2; Rec. Doc. 71-3.

the post-incident statement is not admissible to show Firmin state of mind when writing the report as he memorialized his account of the incident before receiving the text message from A.L.

Firmin also argues that the post-incident statement is admissible under Rule 804(b)(3) because it is against Victim 1's penal interest and pecuniary interests.[54] Rule 804(b)(3) only applies to statements made by person who is "unavailable" to testify at trial. The Rule explains:

> A declarant is considered to be unavailable as a witness if the declarant:
> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> (2) refuses to testify about the subject matter despite a court order to do so;
> (3) testifies to not remembering the subject matter;
> (4) cannot be present or testify at the trial or hearing because of death or a then existing infirmity, physical illness, or mental illness; or
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure…. the declarant's attendance or testimony. . . .[55]

"[T]he proponent of the hearsay evidence, has the burden of proving the unavailability of the witness. . . ."[56]  Firmin has not presented any argument or information to show that Victim 1 is unavailable to testify at trial. Therefore, Firmin has not met his burden of proving that any exceptions to the hearsay rules apply to Victim 1's post-incident statement. Accordingly,

---

[54] Rec. Doc. 60 at 11.

[55] Fed. R. Evid. 804(a).

[56] *United States v. Fernandez-Roque*, 703 F.2d 808, 812 (5th Cir. 1983).

**IT IS HEREBY ORDERED** that the government's Motion in Limine to Exclude Inadmissible Hearsay Statements[57] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to exclude post-incident statement made to A.L. by Victim 1, unless used for the purpose of impeachment if Victim 1 is called to testify. The motion is **DENIED** to the extent it seeks to exclude pre-incident statements made to A.L. by Victim 1 that A.L. communicated to Firmin.

**NEW ORLEANS, LOUISIANA**, this __10th__ day of April, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[57] Rec. Doc. 43.